UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Doniel Kleiman, by his Next Friend
and Natural Guardian, Steve Kleiman,

    Plaintiff,

    v.                                            Civil Action No. 1:10-CV-83

Jay Peak, Inc., Jay Peak Management, Inc.,
Christian M. Paupe, Joanne LaPensee, and
Travis Industries, Inc.,

    Defendants.

## OPINION AND ORDER
(Docs. 105, 109)

Non-party Attorney Colin R. Benjamin moves pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii) to quash a subpoena *duces tecum* dated February 24, 2012, compelling him to testify and produce certain documents. (Doc. 105 at 1.) Defendant Travis Industries, Inc. opposes Benjamin's motion and moves to compel compliance with the subpoena *duces tecum*. (Docs. 108, 109.) For the reasons stated below, Benjamin's Motion to Quash is granted in part and denied in part, and Travis Industries, Inc.'s Motion to Compel is granted in part and denied in part.

## Background

In April 2010, Plaintiff Steve Kleiman, on behalf of his minor son Doniel Kleiman, filed a Complaint alleging several causes of action, including negligence, product liability/insufficient warning, and strict liability. (Doc. 1 at 5, 9, 10.) The facts,

as alleged by Kleiman, are as follows:  In January 2006, Kleiman's family rented a condominium unit at Jay Peak Resort, which is owned by Defendants Christian Paupe and Joanne LaPensee.  (Doc. 1 at ¶¶ 4, 11, 15.)  The condominium unit contained a gas fireplace insert with a glass front, which was manufactured by Defendant Travis Industries, Inc. ("Travis").  (*Id.* at ¶¶ 17, 28.)  At the time of the Kleiman family's arrival, the fireplace was producing heat, but the Kleimans did not observe any indication of this.  (*Id.* at ¶¶ 22, 23, 25, 26.)  The Kleimans did not discover that the fireplace was running until Doniel, who was eleven months old at the time, burned his hands by touching the glass front of the fireplace.  (*Id.* at ¶¶ 15, 28-30.)

On September 14, 2007, Attorney Benjamin, representing the Kleimans, sent a Notice of Claim letter to Defendants.  (Doc. 108-3.)  In relevant part, the letter stated as follows:

> No instructions or warnings related to the fireplace insert were provided or apparent anywhere in [the condominium unit]. *Upon check-in, the Kleimans were provided with a single-sided sheet of 8.5x11[] paper that began, "Just a few reminders to make your stay more enjoyable . . . ."*  A paragraph with the heading "Fireplace" stated the following:
>
>> Please open the damper before lighting the fireplace.  The handle is located under the hood and should face downward when in use.  In the Village Condominiums, it is necessary to set the thermostat higher than the room temperature for the gas fireplace to work.

(*Id.* at 3 (emphasis added).)  During his deposition, however, Kleiman repeatedly denied receiving any instructions regarding operation of the fireplace prior to checking into the condominium unit.  (Doc. 108-2 at 8-9, 17-19.)  Kleiman's wife and other members of

2

the Kleiman party also testified that they did not remember receiving any fireplace instructions prior to check-in.  (Doc. 108-5, Doc. 108-6 at 2-5, Doc. 108-7 at 2-5.)

On February 24, 2012, Travis served Benjamin with a subpoena *duces tecum* ("the subpoena") seeking deposition testimony and requesting document production.  (Doc. 108-9.)  Travis demanded production of the above-described Notice of Claim letter, the instructions referenced in that letter, all documents relating to Benjamin's legal representation of the Kleimans, all documents relating to Benjamin's authority to make statements in the Notice of Claim letter, and "all documents relating to the factual circumstances" of Benjamin "discovering" the fireplace instructions.  (*Id.* at 5.)  On March 22, 2012, Benjamin filed a Motion to Quash, claiming that Travis had already taken ten depositions in this lawsuit,[1] and that the subpoena sought information that was subject to a privilege.  (Doc. 105 at 2.)  Benjamin subsequently filed a privilege log identifying eleven documents classified as protected by either the work product doctrine or the attorney-client privilege.  (Doc. 107 at 3.)  Travis filed an opposition to the motion to quash (Doc. 108), and moved to compel compliance with the subpoena (Doc. 109).

## Analysis

I.   **Production of Documents**

   A.   **The Welcome Sheet (Bates No. 001)**

Benjamin moves to quash Travis's subpoena as it pertains to a document identified in the privilege log as the "Welcome Sheet" (Doc. 107 at 3; Doc. 105 at 2), which

---

[1] Although Benjamin initially maintained in his motion that Travis had exceeded ten depositions, and thus could not take an eleventh without leave of Court, *see* Fed. R. Civ. P. 30(a)(2), Benjamin has since abandoned this argument.

appears to be the "single-sided sheet of 8.5x11 paper" referred to in Benjamin's Notice of Claim letter (Doc. 108-3 at 3). Benjamin claims that the Welcome Sheet is a privileged document protected by the work product doctrine and not subject to production. (Doc. 107 at 2.) This assertion is unpersuasive.

It is Benjamin's burden to demonstrate that the work product privilege applies, given that, "[t]he party seeking to assert the [work product] privilege has the burden of establishing its existence." *SEC v. Nadel*, No. CV 11-215(WFK)(AKT), 2012 WL 1268297, at *6 (E.D.N.Y. Apr. 16, 2012). The Federal Rules of Civil Procedure codify the work product privilege, providing as follows: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A). "[T]hose materials," however, "may be discovered if: (i) they are otherwise discoverable . . .; and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*; *see In the Matter of Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991* ("*Grand Jury Subpoenas*"), 959 F.2d 1158, 1166 (2d Cir. 1992); *Sporck v. Peil*, 759 F.2d 312, 316 (2d Cir. 1985). Still, even if the court orders discovery of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *see Sporck*, 759 F.2d at 316.

"Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and

4

the inferences he draws from interviews of witnesses." *Sporck*, 759 F.2d at 316. Nonetheless, "[t]he attorney-work-product doctrine generally does *not* shield from discovery documents that were *not* prepared by the attorneys themselves, or their agents, in the course of or in anticipation of litigation." *Grand Jury Subpoenas*, 959 F.2d at 1166 (emphases added). Application of the attorney work product rule "depends upon the existence of a real, rather than speculative, concern that the thought processes of . . . counsel in relation to pending or anticipated litigation would be exposed." *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987) (citations and footnote omitted).

During oral argument, counsel for Benjamin advised the Court that the Welcome Sheet was obtained by Benjamin's private investigator ("PI") when she rented the same condominium unit that the Kleimans had rented prior to their son sustaining the injuries giving rise to this lawsuit. It is undisputed that the Welcome Sheet existed before Benjamin's PI obtained it, and that the document was not selected or compiled by Benjamin, his PI, or any other of Benjamin's agents. Thus, the work product privilege does not shield the Welcome Sheet from production. *See Mercator Corp. v. United States*, 318 F.3d 379, 384 (2d Cir. 2003) (providing that "the principle underlying the work product doctrine – sheltering the mental processes of an attorney as reflected in documents prepared for litigation – is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents").

5

Benjamin maintains that the Welcome Sheet is subject to the work product privilege because it "was received from [a] private investigator as part of her investigation." (Doc. 107 at 2.)  In support of this claim, Benjamin cites to *In re PCB File No. 92.27* ("*PCB File*"), 167 Vt. 379, 382-83 (1998), where the Vermont Supreme Court found that a witness's statements to an attorney's investigator, along with the investigator's corresponding notes, all of which were made in anticipation of litigation, were protected by the work product privilege, absent a showing of substantial need.  The facts of this case are clearly distinguishable from those in *PCB File*, however, given that *PCB File* did not involve the production of an otherwise discoverable document which pre-existed the attorney and his agent's receipt of it.

The Welcome Sheet is also not protected by the attorney-client privilege, which protects communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  "The privilege's underlying purpose has long been to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.* (internal quotation marks omitted). But the privilege applies "only where necessary to achieve its purpose[,]" and thus courts have uniformly held that "pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403-04 (1976); *United*

6

*States v. Cunningham*, 672 F.2d 1064, 1073 n.8 (2d Cir. 1982); *Grand Jury Subpoenas*, 959 F.2d at 1165 ("Documents created by and received from an unrelated third party and given by the client to his attorney in the course of seeking legal advice do not thereby become privileged."). The Second Circuit explained: "When [the attorney-client privilege] is raised as a bar to the production of pre[-]existing documents given by a client to his attorney to aid in legal representation, it protects only that material which would have been privileged in the hands of the client." *In the Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278-79 (2d Cir. 1983).

For these reasons, the Court finds that neither the work product doctrine nor the attorney-client privilege apply to the Welcome Sheet, and thus it is subject to production.

### B.     Retainer Paperwork (Bates Nos. 002-004, 016-019, 020-023)

Next, Benjamin moves to quash the subpoena with respect to several documents identified in the privilege log as "Retainer agreement," on the grounds that these documents are protected by the attorney-client privilege. (Doc. 105 at 2; Doc. 107 at 2-3.) The Second Circuit has determined, however, that in "the absence of special circumstances[,] client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice." *Vingelli v. United States*, 992 F.2d 449, 452 (2d Cir. 1993). Therefore, like the Welcome Sheet, the retainer agreement documents are subject to production.

### C.  Miscellaneous Communications (Bates Nos. 005-007, 008-010, 011, 012, 013, 014-015)

Lastly, Benjamin moves to quash the subpoena as it relates to various communications between himself, his PI, his legal secretary, and Kleiman's wife (collectively referred to as "miscellaneous communications").  (*See* Doc. 105 at 2; Doc. 107 at 2-3.)  Specifically, Benjamin claims that the work product doctrine attaches to a retainer letter documenting his retention of the PI (No. 005-007), a letter reporting the PI's findings to Benjamin (No. 008-010), an invoice for the PI's services (No. 014-015), and several emails between Benjamin or his secretary and the PI (Nos. 011, 013).  (*See* Doc. 107 at 3.)  Additionally, Benjamin claims that an email between his secretary and Kleiman's wife is protected by the attorney-client privilege.  (*Id.*)

As previously discussed, the work product doctrine protects "materials prepared by a party's attorney in anticipation of litigation," *Grand Jury Subpoenas*, 959 F.2d at 1166, which convey "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," *Sporck*, 759 F.2d at 316.  Upon review of the miscellaneous communications provided by Benjamin, it is clear that the letter from the PI which reports her findings (No. 009-010) and the email correspondence between Benjamin and the PI (Nos. 011, 013) convey mental impressions.  Thus, these documents are protected by the work product doctrine.  Likewise, the retainer letter (No. 005-007) and the PI's invoice for services (No. 014-015) are protected because, even though they appear to be generic business documents, they convey some legal strategy, and Travis has not shown substantial need for their

8

disclosure.  *See Grand Jury Subpoenas*, 959 F.2d at 1166.  Finally, the email exchange between Kleiman's wife and Benjamin's secretary satisfies the requirements of the attorney-client privilege because it is a confidential conversation between a client and an agent of her attorney in furtherance of the client's legal claim.  *See Cendant Corp. v. Shelton*, 246 F.R.D. 401, 404 (D. Conn. 2007).

For these reasons, the Court finds that the "miscellaneous communications" are protected by either the attorney-client privilege or the work product doctrine, and thus they are not subject to production.

## II.     Deposition of Attorney Benjamin

Benjamin also moves to quash the subpoena as it pertains to his deposition.  (Doc. 105 at 2-3, ¶¶ 7-9.)  He asserts that deposing him will involve privileged matters and impair the attorney-client relationship.  (*Id.* at 3, ¶ 9.)  He further claims that there are other discovery devices which may be used to obtain the information sought.  (*Id.*)  In response, Travis argues that it must depose Benjamin "for three limited purposes: (l) to authenticate and date any documents responsive to the *duces tecum* requests, (2) to confirm Benjamin's authority or agency during the relevant time period, and (3) to discover the factual basis (or lack thereof) for Benjamin's assertion in the Notice of Claim letter that the Kleimans had received fireplace instructions upon check-in at Jay Peak resort."  (Doc. 108 at 12.)  The first two of these rationales present little controversy in light of the prior discussion.  The third rationale, however, warrants particular consideration and analysis.

Despite the otherwise lenient standard for discovery, depositions of opposing counsel are "disfavored." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991); *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340, 344 (W.D.N.Y. 2009). The presumption disfavoring attorney depositions "is based on the recognition that even a deposition of counsel limited to relevant and non[-]privileged information risks disrupting the attorney-client relationship and impeding the litigation." *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) (internal quotations omitted). Nevertheless, depositions of opposing counsel are not categorically barred. *Id.*; *see In re Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) ("[T]he fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices."). In determining whether deposing an attorney is appropriate in a particular case, the Second Circuit has held that the standards set forth in Federal Rule 26 require a "flexible approach," considering all the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. *Friedman*, 350 F.3d at 72. These considerations may include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.*

    **A.**    **Applicability of the Attorney-Client Privilege**

Preliminarily, Benjamin asserts that, although he is not counsel of record, he "remains by agreement one of the Plaintiff's attorneys" and is a partner of Attorney

10

William Durrell, one of Plaintiff's attorneys of record. (Doc. 105 at 1, ¶ 1.) As an attorney for Plaintiff, Benjamin claims that his prospective deposition testimony "can . . . be characterized as privileged attorney-client communication . . . ." (*Id.* at 2, ¶ 7.) More specifically, he argues that, if his deposition were to proceed "anywhere beyond mere foundation issues," he would be required to testify about matters subject to the attorney-client privilege. (*Id.* at 3, ¶ 9.) Travis disagrees, claiming that "[t]here is no direct evidence that Kleiman and Benjamin even had a conversation, much less a confidential conversation, regarding the fireplace instructions." (Doc. 108 at 13.) Moreover, Travis contends that, even if such a conversation occurred, Benjamin's deposition could be conducted "without requiring him to divulge the substance of any actual attorney-client communications." (*Id.* at 13-14.)

The burden is on the party claiming the protection of a privilege to establish the essential elements of the privileged relationship, and this burden may not be discharged by mere conclusory assertions. *In re Grand Jury Subpoena*, 750 F.2d 223, 224-25 (2d Cir. 1984); *see Vermont Gas Systems, Inc. v. U.S. Fidelity & Guar. Co.*, 151 F.R.D. 268, 275 (D. Vt. 1993). Regarding the substance of what must be established, courts look to the elements of the privilege that is invoked. *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993). Because this is a diversity action involving state law claims, under Federal Rule of Evidence 501, it is state law that defines the elements of the attorney-client privilege. *Id.* Vermont law limits the attorney-client privilege to "'confidential communications'" between a client and his or her attorney or the attorney's representative(s) "'made *for the purpose of facilitating the rendition of*

11

*professional legal services to the client.*'" *Vermont Gas Systems*, 151 F.R.D. at 274-75 (quoting Vt. R. Evid. 502(b)) (emphasis added). Similarly, federal law in the Second Circuit provides that the attorney-client privilege "protects '[c]onfidential disclosures by a client to an attorney *made in order to obtain legal assistance*.'" *Grand Jury Subpoenas*, 959 F.2d at 1165 (quoting *Fisher*, 425 U.S. at 403) (emphasis added). The purpose of the attorney-client privilege "is to foster open communication between attorneys and their clients, so that fully informed legal advice may be obtained." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

Given that Benjamin's deposition has not yet occurred, it is somewhat difficult to determine whether the attorney-client privilege applies to Benjamin's *potential* testimony regarding his assertion in the Notice of Claim letter that the Kleimans had received the Welcome Sheet upon their check-in at a condominium unit at Jay Peak ski resort. (*See* Doc. 108-3 at 3.) Travis claims Benjamin's deposition must proceed because the Kleimans testified – in contradiction to Benjamin's statement in the Notice of Claim letter – that they never saw or received the Welcome Sheet (*see* Doc. 108-2 at 65, 161, 167; Doc. 108-5 at 55-56, 261-62); and because Benjamin "is the only person capable of authoritatively affirming or negating [the] Kleimans['] deposition testimony on a central liability issue," i.e., the issue of whether the Kleimans received documentation advising them about how to use the fireplace which is the subject of this

lawsuit (Doc. 108 at 13).[2]  As noted earlier, Benjamin has explained the contradiction between his statement in the Notice of Claim letter and the Kleimans' deposition testimony by recording in a Privilege Log that his investigator (and not the Kleimans) received the Welcome Sheet (*see* Doc. 107 at 3), and by advising the Court at oral argument that his investigator obtained the Welcome Sheet by renting a condominium unit at Jay Peak Resort subsequent to the Kleimans' rental of a unit at the Resort.

Accepting as true Benjamin's representation that his investigator obtained the Welcome Sheet independently from the Kleimans, it cannot be said that deposing Benjamin on this topic would invade the attorney-client privilege.  As explained above, the attorney-client privilege "affords confidentiality to communications among clients and their attorneys for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding." *Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*, No. 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *2 (S.D.N.Y. Dec. 6, 2010).  If Benjamin's investigator provided the Welcome Sheet to Benjamin, the issue of how Benjamin came to obtain that document does not involve any communication between the Kleimans and Benjamin for the purpose of seeking or rendering legal assistance.  Moreover, there is no risk of impeding the Kleimans' "open communication" with Benjamin for the purpose of obtaining "informed legal advice." *United States v. Jacobs*, 117 F.3d at 87.

---

[2] The Court notes that, although an important issue in this lawsuit is whether the Kleimans received instructions regarding how to use the subject fireplace prior to their son being burned by it, the suit does not hinge on that issue alone.  In fact, Kleiman testified at his deposition that, even if he had received and read the Welcome Sheet, he still "would not have thought the thermostat [(which controlled the fireplace)] was turned on" when he arrived in the condominium unit. (Doc. 108-2 at 162.)

For these reasons, the attorney-client privilege does not prevent Travis from deposing Benjamin on the limited issue of how Benjamin obtained a copy of the Welcome Sheet.[3]  Moreover, there is a need to depose Benjamin on this topic, so that he may clarify the confusion created by his statement in the Notice of Claim letter that the Kleimans "were provided with" the Welcome Sheet when they checked into the condominium unit.  (Doc. 108-3 at 3.)  During the deposition, Benjamin must answer questions regarding his investigator's receipt of the Welcome Sheet, but he may invoke the attorney-client privilege and refrain from responding if asked to disclose confidential communications between himself and the Kleimans, including communications regarding transfer of the Welcome Sheet.  *See Cunningham*, 672 F.2d at 1073 n.8 ("[W]e do not suggest that an attorney-client privilege is lost by the mere fact that the information communicated is otherwise available to the public.  The privilege attaches not to the information but to the communication of the information.").

### B.   Waiver of the Attorney-Client Privilege

Travis argues that, even if Benjamin and the Kleimans' communications regarding transfer of the Welcome Sheet are protected by the attorney-client privilege, the doctrine of implied waiver applies to forfeit that privilege.  (*See* Doc. 108 at 9-10, 14-15; Doc. 117 at 3-5.)  Specifically, Travis asserts that the Kleimans waived the attorney-client privilege

---

[3] The Court is not persuaded by Benjamin's argument that Travis should be required to pursue alternative methods of discovery, such as serving requests to admit, rather than deposing Benjamin. (Doc. 105 at 3.)  The Second Circuit has rejected this argument.  *See Friedman*, 350 F.3d at 69 n.2 (collecting cases noting that oral depositions should not routinely be replaced by written questions).

14

when they testified in deposition that they never received a copy of the fireplace instructions referenced in Benjamin's Notice of Claim letter.  (*See* Doc. 117 at 3.)

The Vermont Supreme Court has stated that the attorney-client privilege "may be waived if a party puts communication between himself and his attorney at issue." *Chase v. Bowen*, 183 Vt. 187, 201 (2008) (holding that attorney may be required to testify about a communication regarding his client's plea agreement when client puts that communication at issue); *see Steinfeld v. Dworkin*, 147 Vt. 341, 343 (1986) (holding that "a party attacking his own attorney's authority to settle impliedly waives the privilege as to the very matter he puts in issue"); *cf. Vermont Gas Systems*, 151 F.R.D. at 276 (holding that insured did not impliedly waive attorney-client privilege in underlying environmental damage suits by bringing suit against insurer based on its contractual obligation to indemnify and defend insured).  The Second Circuit stated the general rule as follows:  Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense . . . ." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)).[4]  Recognizing that the attorney-client privilege is one of the "oldest recognized privileges for confidential communications," and that its purpose is to

---

[4] Importantly, it is the *client's* statements which give rise to the waiver, not the attorney's. *See In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) ("[T]he privilege belongs solely to the client and may only be waived by him.  An attorney may not waive the privilege without his client's consent.").  Thus, Benjamin's statement in the Notice of Claim letter that the Kleimans had received the Welcome Sheet does not suffice to waive the attorney-client privilege on behalf of the Kleimans.

15

"encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice," the Second Circuit has held that "rules which result in the waiver of th[e] attorney-client] privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." *Id.* (internal quotation marks omitted). The court particularly cautioned that the waiver issue must be decided on a case-by-case basis, in the specific context in which the privilege has been asserted, rather than on the basis of generalizations. *See John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).

Here, by testifying in deposition (in response to opposing counsel's questioning) that they had not seen the Welcome Sheet prior to this lawsuit and did not know how Benjamin obtained it (*see* Doc. 108-2 at 65, 161; Doc. 108-5 at 56, 262), the Kleimans did not put any communication between themselves and their attorney at issue. Nor did Kleiman put any communication between himself and his attorney at issue when he responded "No" to opposing counsel's question, "did you ever tell [Benjamin] that you guys received instructions from Jay Peak about how to operate the gas fireplace," particularly given that Kleiman's attorney immediately followed up this response with an objection based on the attorney-client privilege. (Doc. 108 at 13.) *See Pilot v. Focused Retail Property I, LLC*, 274 F.R.D. 212, 217 (N.D. Ill. 2011) ("Attorneys commonly discover an inadvertent disclosure at a deposition, and objecting to the use of privileged material represents an important step toward preserving the privilege.").

Travis claims that "[Kleiman] has gained adversarial advantage in this action by putting the veracity of his own attorney's statement at issue for his own benefit." (Doc.

16

108 at 14.) But the Court can see no advantage to Kleiman impliedly testifying, *in response to opposing counsel's questioning, and under objection*, that his counsel's statement in a Notice of Claim letter that the Kleimans had received the Welcome Sheet was erroneous. The Kleimans' testimony that they had not received the Welcome Sheet prior to this lawsuit is a separate matter, not involving any communication with their attorney. Courts have held that "a client does not normally lose the privilege as to communications with his attorney merely because he testifies . . . to the same events discussed with his lawyer." *U.S. v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998) (no waiver where no showing client told anyone else about his communications with attorney, though he disclosed the facts shared with attorney). Here, the Kleimans' deposition testimony that they had not seen the Welcome Sheet prior to this lawsuit, placed only this underlying fact in issue; it did not place in issue any communications between the Kleimans and their attorney. Travis's argument fails to recognize the legal distinction between the actual fact – whether the Kleimans received the Welcome Sheet when they checked into the condominium unit – and any communication the Kleimans may have had with attorney Benjamin regarding this fact. The Kleimans would have had to testify about their communications with Benjamin in order to waive the attorney-client privilege. As discussed above, Kleiman stated "No" in response to opposing counsel's question about whether he knew how Benjamin obtained the Welcome Sheet, and Kleiman's attorney objected immediately thereafter on attorney-client privilege grounds. On these facts, it cannot be said that the Kleimans waived the attorney-client privilege with respect to the issue of transfer of the Welcome Sheet.

## Conclusion

For the aforementioned reasons, Benjamin's Motion to Quash is DENIED in part, and Travis's Motion to Compel is GRANTED in part, as they pertain to Benjamin's deposition and the documents labeled 001, 002-004, 016-019, and 020-023 in the privilege log.  Moreover, Benjamin's Motion to Quash is GRANTED in part, and Travis's Motion to Compel is DENIED in part, as they pertain to the documents labeled 005-007, 008-010, 011, 012, 013, and 014-015 in the privilege log.

Dated at Burlington, in the District of Vermont, this 27th day of June, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge